UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 21-CR-745 |
| | : | |
| v. | : | |
| | : | |
| KRISTINA ANN BALLARD, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

From January 2015 through December 2020, Kristina Ann Ballard stole more than a quarter-million dollars from her employer, a nonprofit organization located in Washington, D.C. She started stealing from the organization on January 30, 2015, just four days after she was indicted in Arlington County, Virginia, for embezzling from a previous employer. She pleaded guilty to embezzling from the previous employer on February 25, 2015. On July 17, 2015, she was sentenced to four years of probation. In requesting mercy from the Arlington court, she claimed that she had learned from her mistakes, and that the experience had been "a life changing event that I would never let happen again." Her statement was patently false. Not only did she let it "happen again," she was actively embezzling from the victim organization in this case while her Arlington court case was pending. Between her January 2015 indictment in Arlington and her July 2015 sentencing hearing, she stole more than $30,000 from the D.C. employer through nine separate fraudulent wire transfers. She then went on to steal another $240,000 before her scheme ultimately ended. Given Ballard's brazen conduct, which included using the Victim Organization's credit card to pay nearly $25,000 in restitution that she owed to the Arlington County Circuit Court, the government respectfully requests that the Court sentence her to 36 months in prison to be followed by three years of supervised release.

I.      **Background**

The defendant has had a complicated life. Although she described her childhood as good, she has been in abusive relationships and struggled with substance abuse. *See* PSR ¶ 51-79. For more than twenty years, she worked in the accounting department of an organization in Arlington, Virginia ("Arlington Employer"). PSR ¶ 83. She was ultimately fired after the organization learned that she had embezzled tens of thousands of dollars between January 2013 and August 2013. PSR ¶ 40, 83. She then worked as a temporary employee completing financial-related duties for temp agencies before ultimately being hired in August 2014 by the Victim Organization, a nonprofit located in Washington, D.C. PSR ¶ 84-85. By the time of her December 2020 termination for poor performance, she was earning an annual salary of $106,000 as the organization's Director of Finance. PSR ¶ 85.

On November 9, 2014, a few months after the Victim Organization hired her, Ballard was arrested for embezzling from the Arlington Employer. PSR ¶ 40. She was indicted in Arlington County Circuit Court on January 26, 2015. *See* Exhibit One.

A mere four days after she was indicted in Arlington, she started stealing from the Victim Organization. She continued stealing from it through sentencing and then ultimately through the many years she was on probation. Specifically, on January 30, 2015, she fraudulently wired $4,200 of Victim Organization funds to an account that she controlled. Then, on February 18, 2015, she fraudulently wired an additional $4,800 in funds. Exactly one week later, on February 25, 2015, she pleaded guilty in Arlington County Circuit Court to one count of felony embezzlement. *See* Exhibit Two. One week later, on March 4, 2015, she fraudulently wired $4,500 of Victim Organization funds to an account she controlled. She fraudulently wired funds to herself five more

2

times before her July 17, 2015, sentencing hearing ($2,800 on May 21, $2,600 on June 2, $3,400 on June 16, $3,600 on June 24, and $2,400 on July 6). *See* Exhibit Three.

Ballard requested mercy from the Arlington Court, telling the Virginia probation officer who prepared her presentence report that she would pay back the Arlington Employer in full. She deceptively claimed that she had learned from her mistakes and that this was "something I would never do again. It was a life changing event that I would never let happen again." PSR ¶ 40. The sentencing judge likely credited her statements, but they were brazenly false. By the time the Arlington County court sentenced her to four years of probation, Ballard already had stolen more than $30,000 from the Victim Organization. She went on to steal a total of $271,456.86, negatively affecting the organization immensely. *See generally* Victim-Impact Statement, ECF No. 14.

Ballard did not just steal money from the Victim Organization. She stole its "time, energy, and peace of mind," forcing its employees to spend "countless hours to investigate thousands of financial transactions to piece together the extent of the damage." *Id*. at 3. Each of her more than 110 fraudulent wire transfers was below $5,000. The Victim Organization's Executive Director noted that fact's importance. "Ballard concealed her thefts by intentionally setting each wire fraud transaction below the $5,000 threshold that would have triggered our Board Treasurer's scrutiny and the level of 'materiality' that auditors would have noticed." *Id*. Ballard also created fake invoices and lied when the Victim Organization asked about documentation. *Id*. The Organization's Executive Director also noted that when a junior colleague questioned Ballard about some transactions, Ballard tried to fire her. *Id*. Ballard also placed the organization in legal and financial jeopardy when she lied to auditors about the organization's audit and tax return. *Id*.

3

When Ballard was terminated, she was incredibly uncooperative. She wiped her organization laptop, refused to respond to the organization's employment attorneys, and would not turn over documents in her possession. *Id*. Approximately four months later, in March 2021, the organization started to learn just how devastating Ballard's employment had been. *Id*.

On the day that Ballard was fired, she contacted the Victim Organization's credit card company to have all correspondence sent to her personal email address, which resulted in a four-month delay for the organization to receive written notice from the credit card company that it was in arrears. *Id.* at 4. That is also how long it took the organization to learn that Ballard charged approximately $25,000 on the organization's credit card to pay off her restitution obligations in Arlington. *Id*. The fact that she stole organization funds to pay her restitution obligation for her Arlington embezzlement conviction gives an entirely new meaning to her 2015 promise to pay back the Arlington Employer in full. *See* PSR ¶ 40.

Just as she did in 2015, Ballard asks this Court to show "mercy in considering my punishment," noting that she is taking steps to "never be in this situation again." PSR ¶ 27.

**II.     Sentencing Guidelines**

Under the U.S. Sentencing Guidelines, Ballard's total offense level is 18. The base offense level for wire fraud is seven pursuant to USSG §2B1.1(a)(1). PSR ¶ 29. Because the loss amount was more than $250,000, an additional 12 levels are added pursuant to USSG §2B1.1(b)(1)(G). PSR ¶ 30. An additional two levels are added pursuant to USSG §3B1.3 because the defendant abused her position of trust. PSR ¶ 32. A three-level reduction, pursuant to USSG §3E1.1, is warranted, however, because the defendant demonstrated responsibility by pleading guilty and assisted the government by timely notifying it of her intention to plead guilty. *See* PSR ¶ 36-37.

The defendant has four criminal history points, one for her Arlington County Circuit Court embezzlement conviction, one for her 2016 Driving While Intoxicated conviction, and two for committing the instant offense while she was under a criminal justice sentence. PSR ¶ 40-44. With a total offense level of 18 and Criminal History Category III, the recommended imprisonment range is 33 months to 41 months. PSR ¶ 101.

### III.     The 18 U.S.C. § 3553(a) Factors

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

#### A.     The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The defendant's fraud was extensive. She initiated more than 110 fraudulent wire transfers over an almost six-year period of time. She intercepted credit card rewards checks to which she was not entitled. She forged an Executive Director's signature on checks. She used the organization's credit card more than 70 times to pay for things like hotel expenses, restaurant meals, Washington Nationals tickets, eyeglasses, and, most shocking of all, her restitution obligation from her Arlington embezzlement conviction. Stated differently, on more than 190 separate occasions, she deliberately decided to steal money from a nonprofit organization.

5

The seriousness of her conduct is heightened by her behavior before the Arlington Circuit court. There can be no doubt that the judge overseeing that case would have incarcerated her if the court had known that Ballard's statement about learning her lesson and promising never to do something like this again was beyond disingenuous. There are many cases where defendants tell judges that they have learned their lessons and will not be back before the court, and honestly convey those sentiments only to go on to recidivate despite their honest intentions and hopes at sentencing. This is not one of those cases. On the contrary, Ballard was actively stealing from the Victim Organization throughout the pendency of the Arlington court case when she deceptively (and successfully) portrayed herself as a person who had learned from the experience and who was committed to doing better.

The fact that she did not face any real consequences in the Arlington case—not just for egregiously violating the terms of her probation (committing the same type of crime and stealing even more money) but for deliberately deceiving the Court—is extremely troubling. Unfortunately, when Ballard was under the Arlington court's jurisdiction, the judge did not know what we know now, that she was disingenuous with the court from the time she was indicted through the time she was sentenced. The only extra sanction she faced in that case was having to do an additional 100 hours of community service following her DWI conviction. As part of her supervised release conditions in this case, the Court should order that she perform 200 hours of community service.

In light of the defendant's actions and the serious harm she caused to the Victim Organization, which is eloquently set forth in the victim-impact statement, a significant period of incarceration is warranted to reflect the nature, circumstances, and seriousness of the offense.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

The defendant's prior conviction did nothing to deter her from engaging in criminal conduct. Instead, she doubled down on her crime, shamelessly choosing to steal more than a quarter-million dollars from the Victim Organization. Although a lengthy prison sentence is warranted for general deterrence purposes, it is particularly necessary to specifically deter this defendant.

### C. The History and Circumstances of the Defendant

If this were the defendant's first criminal conviction, it would be understandable if the Court wanted to show her the mercy that she requests. But far from being her first conviction, she engaged in the criminal behavior at issue in this case immediately after she was indicted in Arlington, multiple times before she was sentenced, and then for years while she was on probation.

The defendant's guidelines range under the plea agreement, 33 to 41 months, is exceedingly generous considering that she could have been convicted of Aggravated Identity Theft under 18 U.S.C. § 1028A for forging the former Executive Director's signature on credit card rewards checks. Such a conviction would have carried a mandatory two-year prison sentence to run consecutive to any other sentence. Stated differently, her guidelines under a plea agreement that required her to plead guilty to Wire Fraud and Aggravated Identity Theft, would have resulted in an effective range of 57 to 65 months, even after acceptance credit. Accordingly, a 36-month sentence certainly is not greater than necessary to achieve the purposes of sentencing.

### D. Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the

7

sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533.

A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

## IV. Restitution and Forfeiture

As part of her plea agreement, Ballard agreed to pay mandatory restitution as it applies under 18 U.S.C. § 3663A. Apart from that determination, she agreed to pay $246,465.86 in restitution to the Victim Organization and $25,000 to the Philadelphia Insurance Company, which paid the Victim Organization that amount under a Commercial Crime Coverage Policy. Pursuant to 18 U.S.C. § 3664(j)(1),

> "If a victim has received compensation from insurance . . . with respect to a loss, the court shall order that restitution be paid to the [insurance company] who provided . . . the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation."

Thus, the government requests that the Judgment provide for priority payment to the Victim

Organization. *See United States v. Baldwin*, 389 F. Supp. 2d 1, 4 (D.D.C. 2005) (noting that all restitution must be made first to the victims before it can be paid to the insurance company).

The defendant agreed to the entry of a $271,465.86 forfeiture money judgement. The Court signed the Consent Order of Forfeiture on April 14, 2022. ECF No. 12. The government requests that the Court orally reference the forfeiture order at sentencing and include it in the judgment.

## CONCLUSION

The government respectfully submits that the Court sentence Kristina Ann Ballard to 36 months in prison followed by three years of supervised release.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar No. 481052

By:    */s/ Kondi J. Kleinman*
        KONDI J. KLEINMAN
        California Bar No. 241277
        Assistant United States Attorney
        Fraud, Public Corruption & Civil Rights Section
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-6887 | Kondi.Kleinman2@usdoj.gov